UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

MERRILL LYNCH, PIERCE FENNER
& SMITH, INC.,

      Interpleader Plaintiff,    **<u>MEMORANDUM & ORDER</u>**

             16-CV-1856 (MKB)

    v.

SEYMOUR SOHMER

  and

LIBA TARGOWNIK, *individually and as
nominated executor of the estate of
Sally Sohmer*,

      Interpleader Defendants.

------------------------------------------------------------

LIBA TARGOWNIK,

      Plaintiff,    21-CV-172 (MKB)

    v.

SEYMOUR SOHMER,

      Defendant.

------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Interpleader Plaintiff Merrill Lynch, Pierce Fenner & Smith Incorporated ("Merrill

Lynch") filed the first of two related actions ("Action I") on April 15, 2016, pursuant to 28

U.S.C. § 1335, to determine proper ownership of, distribution of, and Interpleader Defendants'

entitlement to funds in a joint investment account held by Merrill Lynch[1] on behalf of the

---

[1] (Action I Compl., *Merrill Lynch v. Sohmer*, No. 16-CV-1856 (E.D.N.Y. Apr. 15, 2016),
Docket Entry No. 1.)  On May 1, 2017, by stipulation of the parties, the Court dismissed Merrill
Lynch as a party.  (Stip. & Order of Dismissal, *Merrill Lynch v. Sohmer*, No. 16-CV-1856
(E.D.N.Y. May 1, 2017), Docket Entry No. 52.)

decedent, Sally Sohmer ("Sally").[2]  On December 17, 2020, Interpleader Defendant Liba

Targownik[3] commenced the second action ("Action II") in New York State Surrogate's Court,

seeking the return of a $210,000 loan Sally had provided to her brother, Interpleader Defendant

Seymour Sohmer ("Seymour"), and Seymour removed the action to this Court.[4]  In his Answer

to the Action II Complaint, Seymour asserted counterclaims for, *inter alia*, intentional

interference with economic interests, conversion, and trespass to chattels, and Targownik later

amended the Action II Complaint to include claims for conversion and trespass to chattels.[5]  On

October 4, 2023, after a six-day trial, the jury awarded the Estate of Sally Sohmer ("Sally's

Estate") a total sum of $800,374.99 and awarded to Seymour a total sum of $470,326.12.

(Verdict Form, Ct. Ex. 6, Docket Entry No. 65.)  On October 11, 2023, the Court entered

judgment according to the jury's verdict, and on January 9, 2024, entered amended judgments in

Action I and II to reflect the appropriate division of awards in each action.[6]

On March 22, 2024, Targownik filed a post-trial motion to set aside the jury's verdict as

inconsistent and to alter or amend the judgment, and Seymour filed a post-trial motion to alter or

amend the judgment.  (Targownik's Post-Trial Mot., Docket Entry No. 80; Seymour's Post-Trial

---

[2]  Because there are multiple individuals with the name Sohmer, for ease of reference, the Court will refer to the Sohmers by their given names.

[3]  Merrill Lynch brought Action I against Targownik as "nominated executor of" and "a named beneficiary of [Sally's] estate."  (Action I Compl. ¶¶ 1, 7.)

[4]  Unless otherwise noted, the Court refers to the docket entries filed in Action II. (Action II Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1; Notice of Removal, Docket Entry No. 1.)

[5]  (Answer, Docket Entry No. 8; Targownik's Letter Mot. to Amend Action II Compl., Docket Entry No. 53; Order dated Oct. 2, 2023 (granting Targownik's letter motion to amend).)

[6]  (*See* Judgment, Docket Entry No. 66; Action I Am. Judgment, *Merrill Lynch v. Sohmer*, No. 16-CV-1856 (E.D.N.Y. Jan. 9, 2024), Docket Entry No. 186; Action II Am. Judgment, Docket Entry No. 77.)

Mot., Docket Entry No. 81.)  In a Memorandum and Order dated August 26, 2024, the Court

(1) denied Targownik's motion to set aside or amend the jury's verdict as inconsistent; (2) granted

Targownik's motion for prejudgment interest on the $210,000 loan to accrue at a rate of 9% per

annum from December 17, 2020, until October 11, 2023; (3) denied Seymour's motion for

prejudgment interest on the conversion claim; and (4) granted Seymour's motion for post-

judgment interest on the conversion claim at the rate set forth in 28 U.S.C. § 1961 (the "August

2024 Decision").[7]  (Aug. 2024 Decision, Docket Entry No. 87.)  On August 29, 2024, the Clerk of

Court entered Second Amended Judgments in each action in accordance with the August 2024

Decision.  (Action I Second Am. Judgment, *Merrill Lynch*, No. 16-CV-1856 (E.D.N.Y. Aug. 29,

2024), Docket Entry No. 198; Action II Second Am. Judgment, Docket Entry No. 89.)

      Currently before the Court are (1) Seymour's motion for partial reconsideration pursuant

to Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure, and (2) Targownik's

motion for partial reconsideration and motion to amend.[8]  For the reasons stated below, the Court

denies Seymour's and Targownik's motions for partial reconsideration and grants in part and

denies in part Targownik's motion to amend.

---

[7]  The Court assumes familiarity with the facts as detailed in the August 2024 Decision.

[8]  (Seymour's Mot. to Reconsider ("Seymour's Recons. Mot."), Docket Entry No. 90; Targownik's Mot. to Reconsider & Amend ("Targownik's Recons. Mot."), Docket Entry No. 91; Seymour's Opp'n to Targownik's Recons. Mot. ("Seymour's Recons. Opp'n"), Docket Entry No. 92; Targownik's Opp'n to Seymour's Recons. Mot. ("Targownik's Recons. Opp'n"), Docket Entry No. 93; Seymour's Reply in Support of Mot. to Reconsider ("Seymour's Recons. Reply"), Docket Entry No. 94.)

## I.  Discussion

### a.  Standards of review

#### i.  Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked"). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ." *Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06-CV-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) (quoting *Langsam v. Vallarta Gardens*, No. 08-CV-2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009)); *see also Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, at *5 (S.D.N.Y. June 7, 2022) (quoting same).  In addition to considering any evidence or controlling cases the court overlooked, the court should also consider whether there has been "an intervening change of controlling law." *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 3159233, at *1 (E.D.N.Y. Apr. 28, 2023) (quoting same).

It is thus well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut.*

*Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs.,*

*Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*, (July 13, 2012)).  "A

motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already

decided' or present arguments that could have been made before the judgment was entered."

*Ethridge*, 49 F.4th at 688 (quoting *Shrader*, 70 F.3d at 257); *see also Salveson v. JP Morgan*

*Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) ("A motion for reconsideration is

'neither an occasion for repeating old arguments previously rejected nor an opportunity for

making new arguments that could have previously been made.'" (quoting *Simon v. Smith &*

*Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014))), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

### ii.   Rule 60

Rule 60(a) of the Federal Rules of Civil Procedure allows a court to "correct a clerical

mistake or a mistake arising from oversight or omission whenever one is found in a judgment,

order, or other part of the record."  Fed. R. Civ. P. 60(a); *Wang v. Int'l Bus. Machs. Corp.*, 839 F.

App'x 643, 645 (2d Cir. 2021).  "Rule 60(a) applies only to 'changes that implement the result

intended by the court at the time the order was entered'; it does not permit 'changes that alter the

original meaning to correct a legal or factual error.'"  *Lowy v. VSUS Techs., Inc.*, 776 F. App'x

742, 743 (2d Cir. 2019) (quoting *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150–51 (2d Cir.

1999)); *see also Wang*, 839 F. App'x at 645–46 ("Rule 60(a)'s purpose is 'not to reflect a new

and subsequent intent of the court, but to conform the order to the contemporaneous intent of the

court.'" (quoting *Marc Rich & Co. A.G. v. United States*, 739 F.2d 834, 837 (2d Cir. 1984))).

Rule 60(b) of the Federal Rules of Civil Procedure provides for relief from a final

judgment, order, or proceeding in the case of:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly
> discovered evidence that, with reasonable diligence, could not have
> been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud . . . , misrepresentation, or misconduct by an opposing

party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); *see also Banister v. Davis*, 590 U.S. 504, 517 n.6 (2020) (same). "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Such motions must be brought "within a reasonable time." *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)). "[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Pastor v. P'ship for Child.'s Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) (citing *Zerman v. Jacobs*, 751 F.2d 82, 84–85 (2d Cir. 1984)); *see also D'Angelo v. State Farm Fire & Cas. Co.*, 201 F.3d 430, 1999 WL 1295353, at *1 (2d Cir. 1999) (unpublished table decision) ("Rule 60(b) is not a substitute for appeal and may not be used to relitigate the merits of a case." (citing *Competex, S.A. v. Labow*, 783 F.2d 333, 335 (2d Cir. 1986))). "[T]he general rule [is] that a movant bears the burden in Rule 60(b) motions[.]" *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (citing *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)); *see also Doe v. Bd. of Educ.*, No. 23-1035, 2024 WL 3024515, at *1 (2d Cir. June 17, 2024) ("The burden of proof is on the party seeking relief." (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001))).

To qualify for Rule 60(b)(6) relief, a plaintiff must also demonstrate either "extraordinary circumstances" or that "the judgment may work an extreme and undue hardship." *Crispin v. Rodriguez*, No. 21-883, 2023 WL 1113536, at *2 (2d Cir. Jan. 31, 2023) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)); *see also Mandala*, 88 F.4th at 361 (noting that "Rule 60(b)(6) 'grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just'" but such relief "is reserved for cases that present 'extraordinary

6

circumstances'" (quoting *Liljeberg*, 486 U.S. at 863–64)); *Honickman v. BLOM Bank SAL*, No. 22-1039, 2024 WL 852265, at *2 (2d Cir. Feb. 29, 2024) ("A plaintiff is ordinarily entitled to Rule 60(b)(6) relief 'only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule.'" (quoting *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020))).

      **b.**   **The Court denies Seymour's motion**

      Seymour argues that the Court erred "when it held that a 9% rather than a 2% pre-judgment interest rate was applicable to the $210,000 check." (Seymour's Recons. Mot. 1.) In support, Seymour argues that the Court erred "by imposing on Seymour a burden that is not imposed by the law" and focusing on the incorrect transaction to determine whether the loan was a consumer debt and subject to a 2% interest rate. (*Id.* at 3.) In addition, Seymour argues that "the only transaction that the Court needed to consider was the one between Sally and her brother Seymour, . . . which fit precisely within the bounds of [New York Civil Practice Law and Rules ("CPLR") §] 5004(b)'s definition" because the $210,000 was used to "pay off a prior loan by Seymour and his wife." (*Id.* at 4.) Seymour further argues that the Court "need not have considered what Seymour did with the $210,000 . . . but even if the Court did, there is no dispute [that] the $210,000 check was used to repay Seymour's (and his wife's) year-old personal loan from a Texas bank, secured by their Texas home." (*Id.*) Finally, Seymour argues that even if the Court "wished to consider the furthest downstream purpose of the $210,000, there is no dispute that the funds were used to repay a loan used to build a home for Seymour and his family in Minnesota." (*Id.* at 5; *see also id.* at 1 (noting that the Sohmers' "colloquial reference to their Minnesota vacation home as a 'farm' was just that, a colloquialism by a city dwelling family with a house in a rural area").)

Targownik argues that the Court should deny Seymour's motion because Seymour has failed to establish that the Court "overlooked controlling caselaw" or "overlooked important facts or misconstrued evidence" in "determining that the $210,000 loan did not constitute a consumer debt." (Targownik's Recons. Opp'n 4.)  In support, Targownik argues that Seymour "cites no appellate authority and only one trial order" to support his motion, the cases he cites are "clearly distinguishable from the facts of [this] case," and courts "have routinely analyzed each level of the loan transaction in order to determine whether it is a personal or commercial transaction." (*Id.* at 2–4.)  In addition, Targownik argues that "Seymour goes through great lengths to massage the negative facts adduced at trial . . . by writing off the statement as a mere 'colloquial reference,'" but that this "is insufficient to establish that the loan was a consumer debt or that the Court overlooked important facts." (*Id.* at 4.)

Seymour has not identified any controlling precedent or evidence that the Court overlooked, any intervening change in controlling law, or any clear error by the Court.  Instead, he raises a new argument, not previously raised — namely, that the Court should not look at how Seymour used the $210,000 but rather only the transaction "between Sally and her brother Seymour." (Seymour's Recons. Mot. 4; *see id.* ("The Court need not have considered what Seymour did with the $210,000 . . . .").)  First, this argument contradicts Seymour's position in his original opposition letter, in which he argued that "[t]he uncontradicted evidence showed that [Seymour], a natural person, *used* the at-issue funds to pay off his home-secured loan, which is 'property . . . primarily for personal, family, or household purposes.'" (Seymour's Opp'n to Targownik's Post-Trial Mot. 8, Docket Entry No. 83 (emphasis added) (citation omitted).)  Second, Seymour has not provided any controlling law that the Court overlooked in determining that the use of the $210,000 was relevant

to whether it was being used "primarily for personal, family, or household purposes"[9] as required

by CPLR § 5004(b).[10]   Seymour's disagreement with the August 2024 Decision does not warrant

---

[9]   For example, in cases analyzing a "consumer debt" under the Fair Debt Collection Practices Act (the "FDCPA"), which uses nearly identical language to define a debt as that of CPLR § 5004(b), courts have looked to the "end use" of the loan. *See, e.g.*, *Spira v. J.P. Morgan Chase*, No. 09-CV-8412, 2010 WL 3910290, at \*4 (S.D.N.Y. Sept. 29, 2010) ("The fact that a loan is informal or that the lender may have loaned the money for personal reasons does not make it a personal loan under the FDCPA. The Act characterizes debts in terms of end uses, covering debts incurred 'primarily for personal, family or household purposes.' Neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." (quoting *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992))), *aff'd*, 466 F. App'x 20 (2d Cir. 2012); *see also Nicolaides v. Divine & Serv., Ltd.*, 382 F. Supp. 3d 251, 255 (E.D.N.Y. 2019) ("[T]o determine whether the transaction was primarily consumer or commercial in nature, courts typically 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended.'" (quoting *Bloom*, 972 F.2d at 1068)). In arguing that the exclusive focus of the *Spira* court was on the plaintiff's "first level transaction," (Seymour's Recons. Reply 2), Seymour ignores the caselaw quoted by the *Spira* court, citing the need for courts to examine the transaction at issue as a whole, look to end uses of the loan, and pay attention to the purpose for which the credit was extended.

[10]   The first case Seymour cites — *American Exp. Nat. Bank v. Mullaly*, No. 157800/2019, 2024 WL 3675739 (N.Y. Sup. Ct. Aug. 6, 2024) — does not support his position. In *Mullaly*, the defendant debtor owed $55,501.55 in charges on two American Express credit cards, which the plaintiff sought to recover. 2024 WL 3675739, at \*1. The defendant argued that the plaintiff could not recover this debt because, as the product corporation of a merger, the plaintiff "did not show a proper assignment, standing or chain of title with respect to [the] defendant's credit card account." *Id.* The court found that the plaintiff, as the subsequent merged corporation, was entitled to pursue its claim because "[a] merged corporation does not by merger lose a cause of action which it had prior to the merger." *Id.* at \*2 (quoting *Albert v. Salzman*, 344 N.Y.S.2d 457, 461 (App. Div. 1973)). The court granted summary judgment in favor of the plaintiff and ordered the clerk of court to "enter judgment in favor of [the] plaintiff and against [the] defendant in the amount of $55,501.55 plus statutory interest at two percent." *Id.* at \*2. However, the court did not define "consumer debt," analyze the nature of any transaction (even the "first level" transaction, as Seymour argues), nor explain its reasoning for awarding interest at a rate of 2% instead of 9%. *See id.* Moreover, even if *Mullaly* did support Seymour's argument, it is not "controlling" authority that the Court overlooked.
     Nor is the second case Seymour cites — *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 680–82 (D. Haw. 2017) — "controlling" authority overlooked by the Court. Moreover, the facts in *Heejoon* are distinguishable. In *Heejoon*, the plaintiff purchased a property with funds from a loan by BNC Mortgage, Inc. secured via a mortgage on the property, and later transferred to U.S. Bank. 250 F. Supp. 3d at 668–69. The court had evidence that the plaintiff entered into the transaction in order to purchase his home, and that he intended to live and ultimately retire there. *Id.* at 681. The plaintiff lived on the property for approximately two years, and although he rented a number of rooms to tenants during that time period, the court held the facts supported

reconsideration. *See, e.g.*, *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 13 (2d Cir. 2015) ("In challenging the denial of [his] motion for reconsideration, [the plaintiff] fails to point to any case law or other relevant information that the district court overlooked. . . . [The plaintiff]'s arguments to the contrary amount to a disagreement with the district court's conclusions with respect to the case law that was already before it, and accordingly, the district court did not abuse its discretion in denying reconsideration." (quoting *Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011))). Accordingly, the Court denies Seymour's motion for reconsideration.

### c.   The Court grants in part and denies in part Targownik's motions

Targownik first moves for reconsideration, arguing that the Court erred in denying her motion to amend the judgment to remove the awards against Targownik for conversion and punitive damages or, in the alternative, to issue reciprocal awards against Seymour for the benefit of Sally's Estate. (Targownik's Recons. Mot. 1–3.) Second, Targownik moves to further amend the Action I Second Amended Judgment[11] to reflect that (1) "the portion of the judgment

---

finding a primarily personal, family, or household purpose. In particular, the court emphasized the plaintiff's intent to live and retire in the home, and the fact that there was no evidence in the record that the plaintiff knew he would later be deployed to Iraq (leaving the property exclusively used as a rental) when he purchased the property. *Id.* The Court does not have similarly clear testimony from Plaintiff. Seymour does not point to any trial testimony supporting his position. Indeed, at various points during the trial the property was referred to simply as a farm. In his latest submission, Seymour argues that testimony at trial made clear that "the Sohmers were merely rebuilding a house" in Minnesota, and points to the lack of evidence in the record of any "farming activity." (Seymour's Recons. Reply 1.) In his September 29, 2024 submission Seymour cites to a reference made in a pre-trial order statement, to the Sohmers' "home in Minnesota." (*Id.*) Thus, Seymour fails to provide compelling evidence that the Court has overlooked or misconstrued these or other important facts.

[11]   The Action I Second Amended Judgment states:
> Seymour Sohmer recover from the Merrill Lynch brokerage account the sum of $362,090.89. The Estate of Sally Sohmer recover from the Merrill Lynch brokerage account the amount of $782,090.89 and from the Apple Bank account the amount of $18,284.10. In addition, the Estate of Sally Sohmer is entitled to $53,282.47 in prejudgment interest.

(Action I Second Am. Judgment.)

relating to [the] Apple Bank should be directed to Seymour" because the account has been closed and the proceeds were withdrawn by Seymour, (*id.* at 3–4); (2) Seymour "pay to the Estate of Sally Sohmer the sum of $53,282.47 in prejudgment interest," (*id.* at 4), and (3) Targownik is entitled to "post-judgment interest at a rate of 5.44% per annum beginning on October 11, 2023, and accruing until the date the Judgments are satisfied," (*id.*).

Seymour opposes both motions, arguing that (1) Targownik's motion for reconsideration should be denied because she "fails to identify any controlling legal or factual matters the Court overlooked," (Seymour's Recons. Opp'n 1–8), and (2) Targownik's motion to amend should be denied because she "did not file [her motion to amend] within a reasonable time of the entry of judgment and fails to provide any mitigating circumstances to justify the untimeliness" and therefore "the lack of explanation for the delay is . . . unreasonable," (*id.* at 8–12).

### i.   Targownik's motion to reconsider

Targownik argues that the Court erred in finding that the verdicts of the jury are reconcilable and requests that the judgments "be amended to include an award against Seymour for conversion and to remove the award against [Targownik] for punitive damages." (Targownik's Recons. Mot. 1–3.)  In support, Targownik first argues that it is well settled under New York law that "a joint holder of a bank account is only an owner up to her one-half (*i.e.*, moiety) interest, and any taking or interference beyond that sum is a conversion," (*id.* at 2 (collecting cases)), and therefore Seymour is also liable for conversion because he sent a "letter of instruction to Merrill Lynch in December 2015, causing the bank to refuse the letter of instruction of Sally Sohmer dated December 17, 2015, directing the withdrawal of her moiety interest," (*id.*).  Targownik further argues that "[h]ad Sally's letter of instruction been honored, Sally's moiety interest would likely have been deposited in an estate account earning interest" rather than "on deposit with the Eastern District earning no interest because of the acts of

11

Seymour," and therefore "it cannot be reconciled that [Targownik]'s acts on behalf of the Estate, causing a delay in Seymour's realization of his share, constituted a conversion while the delay caused by Seymour to the detriment of the Estate did not." (*Id.*)  Second, Targownik argues that New York law "authorize[s] a nominated — and unappointed — executor to act on behalf of a decedent's estate when the purpose is to preserve assets of the decedent," (*id.* (collecting cases)), and therefore, since Targownik "was permitted to act on behalf of the Estate, no jury could find that her conduct rose to the level necessary to warrant punitive damages," (*id.* at 3).

Seymour argues that the Court should deny Targownik's motion because she "has not shown that (1) the Court overlooked any relevant controlling decisions or (2) the Court overlooked critical facts."  (Seymour's Recons. Opp'n 4.)  Seymour first argues that "Targownik's argument that [Seymour's December 22, 2015] letter supports conversion by Seymour . . . is erroneous" because "Seymour could not have possibly committed conversion by sending a demand for one half of the [Merrill Lynch] Account, which undoubtedly belonged to him."  (*Id.* at 4–5.)  Second, Seymour argues that "Targownik cannot now argue that she acted on behalf of the Estate with an effort to preserve assets as she was preventing disbursement of *Seymour's* funds, not the *Estate's* funds" and, even if "Targownik, in her nominated capacity, may have commenced a lawsuit on behalf of the [E]state prior to being officially appointed, she did not have the power in her individual capacity to take acts outside of the immediate preservation, such as by converting Seymour's share of the [Merrill Lynch] Account."  (*Id.* at 7 (citation omitted).)  Third, Seymour argues that he is not "to blame for the fact that Sally's moiety interest remained on deposit with the Eastern District earning no interest rather than being deposited in an interest-bearing account" because the joint stipulation filed by both parties "did not provide for an award of interest."  (*Id.* at 5.)  Finally, Seymour argues that "Targownik fails to provide any factual citations to the record but

the review of the Court's August [Decision] and the underlying documents examined by the jury makes clear that . . . Targownik's accusations are completely unsupported." (*Id.* at 4.)

As a preliminary matter, Targownik does not argue that the Court erred in finding that she waived her objection to any inconsistency in the jury verdict because she failed to object to the verdict prior to the excusing of the jury. (Aug. 2024 Decision 16.) Rather, Targownik appears to argue that the Court erred in finding that the jury's alleged inconsistencies did not constitute "fundamental" or "egregious" error because they were not "so serious and flagrant that [they went] to the very integrity of the trial," and therefore that Targownik had not demonstrated an exception to her waived objection.[12] (*Id.* at 16–18.)

Targownik has not identified any controlling precedent or evidence that the Court overlooked, any intervening change in controlling law, or any clear error by the Court. Instead, she reiterates that the jury verdicts were inconsistent,[13] and disagrees with the Court's example

---

[12]  Targownik also does not argue that the Court erred in applying the fundamental-error standard, (*see* Targownik's Recons. Mot.), nor can she make this argument. Shortly before the Court published the August 2024 Decision, the Second Circuit reaffirmed that "[t]he fundamental-error standard is one that is applied when a party seeks relief from a final judgment after having bypassed the normal opportunity to present his objection," such "as when the party seeks such relief on the basis of inconsistent findings in a jury verdict despite having failed to object to the inconsistency before the jury was discharged." *Salamone v. Douglas Marine Corp.*, 111 F.4th 221, 233 (2d Cir. 2024) (citing *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006)).

[13]  For example, in her post-trial motion, Targownik argued that if the jury determined that Targownik's acts after Sally's death constituted conversion because they delayed Seymour's enjoyment of his one-half share of the account, "then it necessarily must follow that [Seymour]'s acts, which would have led either to the same interpleader action or to [Seymour]'s possession of the whole account — including the one-half due to the Estate, would have had the same effect of delaying the Estate's receipt of the funds." (Targownik's Post-Trial Mot. 3.) However, in her original motion, Targownik only cited actions by Seymour that pre-dated Sally's death, (*see id.* (citing a September 2015 letter and a December 2015 letter)), and the Court relied on actions taken by Targownik and her attorney, Ronan, after Sally's death in providing one explanation for why the jury's verdict was not inconsistent, (*see* Aug. 2024 Decision 17 ("Ronan, on behalf of Targownik, called the Merrill Lynch legal department in an attempt 'to stop the transfer of 100 percent of the funds in [the Merrill Lynch] account' despite the fact that no fiduciary had yet [been] appointed on behalf of Sally's Estate and neither Ronan nor Targownik had 'authority' as

of how the jury verdicts could be harmonized.  (*See* Targownik's Recons. Mot. 1–2 (arguing that the August 2024 Decision "seems to indicate that Seymour did not commit conversion because he was the owner of the [Merrill Lynch] Account").)  However, this was just one example of how the jury's verdict could be consistent.  (*See* Aug. 2024 Decision.)  The jury could have also found that Targownik, even as a nominated yet unappointed executor, interfered with the disbursement of Seymour's half of the Merrill Lynch account when Christopher Ronan, Targownik's attorney, called Merrill Lynch to prevent disbursement of the funds to Seymour.[14] Regardless, the Court found that "[e]ven if the jury's verdict is inconsistent, the alleged inconsistency does not rise to a fundamental or 'egregious' error warranting relief."  (Aug. 2024 Decision 17 (quoting *Perez v. County of Rensselaer*, 858 F. App'x 12, 15 (2d Cir. 2021)).)  Although Targownik argues that "[t]hese discrepancies are 'so serious and flagrant that [they] go[] to the very integrity of the trial,'" (Targownik's Recons. Mot. 3 (alterations in original)), she

---

fiduciary.  Based on this testimony, the jury could have concluded that Targownik did not have ownership, possession, or control over the Merrill Lynch Account at that time, but that she attempted to interfere with the disbursement of those funds to Seymour." (citation omitted))).  Targownik now reiterates that "[i]t is undisputed that Seymour sent a *contra* letter of instruction to Merrill Lynch in December 2015, causing the bank to refuse the letter of instruction of Sally Sohmer dated December 17, 2015, directing the withdrawal of her moiety interest." (Targownik's Recons. Mot. 2.)  Targownik omits, however, that Sally sent two letters of instruction — one directing the withdrawal of her moiety interest and one directing the withdrawal of the entire amount of the Merrill Lynch account, (Trial Tr. 596:13–20, 603:14–20) — and Seymour's letter of instruction only sought to "reject the request of Sally," without specifying which request, and to "demand[] one half of the balance of the [Merrill Lynch] account," (Trial Ex. P).  Accordingly, Targownik raises the same argument and points to the same evidence that she relied on in her original motion.  Moreover, she does not explain how Seymour, who only requested his one-half of the Merrill Lynch Account, committed conversion.

[14]  Although the testimony presented by Ronan could have been interpreted by the jury as an attempt to prevent only the disbursement of half of the Merrill Lynch Account (*i.e.*, Sally's half of the account), (*see* Trial Tr. 840:5–18), the jury could have interpreted it as an attempt to interfere with the disbursement of any funds at all, including funds the jury found Seymour was entitled to, (*see* Verdict Form).  This interpretation by the jury could support a finding of conversion because, as Targownik points out, "it is well settled that a joint holder of a bank account is only an owner up to her one-half (*i.e.*, moiety) interest, and any taking or interference beyond that sum is a conversion," (Targownik's Recons. Mot. 2 (collecting cases)).

14

does not provide any caselaw to support this, nor does she provide any controlling law the Court overlooked.  Accordingly, the Court denies Targownik's reconsideration motion.

### ii.   Targownik's motion to amend the judgments

Targownik moves to amend the judgments in three ways.  (Targownik's Recons. Mot. 3–4.)  First, Targownik argues that "the portion of the [Action I Second Amended Judgment] relating to [the] Apple Bank [Account] should be directed to Seymour" because the account has been closed and the proceeds were withdrawn by Seymour.  (*Id.* at 4.)  Second, Targownik argues that both the Action I and II Second Amended Judgments should be amended to award Targownik "post-judgment interest at a rate of 5.44% per annum beginning on October 11, 2023, and accruing until the date the Judgments are satisfied."  (*Id.*)  Third, Targownik argues that the Action I Second Amended Judgment should be amended to clarify that Seymour must "pay to the Estate of Sally Sohmer the sum of $53,282.47 in prejudgment interest."  (*Id.*)

Seymour argues that the Court should deny Targownik's motion to amend in its entirety.  (Seymour's Recons. Opp'n 8–12.)  Seymour first argues that Targownik seeks "for the first time a modification of the Judgment to note that 'the portion of the judgment relating to Apple Bank should be directed to Seymour,'" (*id.* at 9 (quoting Targownik's Recons. Mot. 3)), and her "failure to seek this relief in her earlier post-trial motion precludes an award," (*id.* at 10).  Second, Seymour argues that Targownik is not entitled to post-judgment interest because (1) her "fail[ure] to seek this relief in [her] earlier post-trial motion precludes an award," (2) "none of the judgments in this action have ever been entered in '[Targownik]'s favor' and thus no post-judgment interest should be awarded in '[Targownik]'s favor'," and (3) her "failure to withdraw the funds does not necessitate that a post-judgment interest rate now be levied on the amounts" because "the Judgment could have been satisfied immediately upon entry" as the funds were deposited with the Court and "have always been available for withdrawal."  (*Id.* at 11.)  Finally, Seymour objects to

Targownik's request to modify the judgment to include prejudgment interest at a rate of 9% for the same reasons Seymour argues above.  (*Id.*; *see also supra* section I.b.)

### 1. The Court denies Targownik's request to amend the Action I Second Amended Judgment regarding the Apple Bank Account

The Court denies Targownik's request to amend the Action I Second Amended Judgment regarding the Apple Bank Account.  The Court understands Targownik to be arguing that, although the jury found that Sally's Estate was entitled to funds in the Apple Bank Account, Seymour withdrew those funds and closed the account.  However, Targownik provides no evidence to support that (1) the Apple Bank Account is now closed, or (2) Seymour withdrew the proceeds from the account.[15]  Without a sufficient factual basis, the Court cannot amend the Action I Second Amended Judgment, which was originally entered in accordance with the jury's verdict and the evidence presented at trial, and later amended in accordance with the August 2024 Decision.  To the extent Targownik seeks to enforce the Action I Second Amended Judgment or to amend the judgment further, she must present sufficient evidence and move under the appropriate federal rules for the Court to take appropriate action.  Accordingly, the Court denies this request to amend.

### 2. The Court denies Targownik's request to amend the Action I and II Second Amended Judgments to include an award of post-judgment interest

The Court denies as untimely and, in the alternative, on the merits, Targownik's request to amend the Action I and II Second Amended Judgments[16] to "include an award in

---

[15]  Seymour did not respond to the underlying factual allegations of Targownik's request. (*See* Seymour's Recons. Opp'n 9–10.)

[16]  The Action II Second Amended Judgment states: "Seymour Sohmer recover from Liba Targownik the amount of $108,235.23.  In addition, Seymour Sohmer is entitled to post-judgment interest from October 11, 2013, until the date the judgment is satisfied, at a rate of $16.13 per day."  (Action II Second Am. Judgment.)  Although Targownik argues that the Court should reconsider the August 2024 Decision and amend "the Judgment . . . to include an award

[Targownik's] favor of post-judgment interest at a rate of 5.44% per annum beginning on October 11, 2023, and accruing until the date the Judgments are satisfied."  (Targownik's Recons. Mot. 4.)

## A.   Timeliness

Seymour argues that "Targownik did not file within a reasonable time of the entry of judgment and fails to provide any mitigating circumstances to justify the untimeliness, and the lack of explanation for the delay is thus unreasonable."  (Seymour's Recons. Opp'n 9.)

Rule 59(e) requires that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  "When both an initial judgment and an amended judgment exist, the timeliness of a Rule 59(e) motion is determined from the date of the amended judgment *only if* the motion bears some relationship to the district court's alteration of the first judgment."  *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 221 (2d Cir. 2017); *see also id.* at 221–22 ("Phrased differently, when a district court alters its judgment, a party aggrieved *by the alteration* must ask for correction *of that alteration* to have the timeliness of their correction determined from the date of the altered judgment.").  "If the Rule 59(e) motion bears no relationship to the district court's alteration of the initial judgment, the motion's timeliness is determined from the date of the earlier judgment."  *Id.* at 222.

"A motion under Rule 60(b) must be made within a reasonable time," and a motion made under Rule 60(b)(1), (2), or (3) must be made "no more than a year after the entry of the

---

against Seymour for conversion and to remove the award against [Targownik] for punitive damages," (Targownik's Recons. Mot. 3), the Court denies her motion for the reasons stated above, (*see supra* section I.c.i).  Accordingly, Targownik has not "recovered" a "money judgment" in Action II and therefore is not entitled to post-judgment interest.  *See* 28 U.S.C. § 1961.  The Court therefore only discusses Targownik's motion to amend to include post-judgment interest on the Action I Second Amended Judgment.

17

judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  "The one-year

limitation period for Rule 60(b)[(1)–(3)] motions is absolute," *Wang*, 839 F. App'x at 646

(alteration in original) (quoting *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham

Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006)); *see also Daniel v. T&M Prot.

Res., LLC*, 844 F. App'x 433, 435 (2d Cir. 2021) ("A litigant must file [certain] Rule 60(b)

motion[s] . . . within a year of entry of the judgment or order."); *United States v. Cirami*, 563

F.2d 26, 32 (2d Cir. 1977) ("While all motions made pursuant to Rule 60(b) must be brought

'within a reasonable time,' the rule specifies that those falling under the first three clauses must,

in addition, be brought within a year of the entry of the challenged judgment.").

However, the "one-year limit is merely an outer limit."  *Gonzales v. Nat'l Westminster

Bank, Plc*, No. 11-CV-1435, 2013 WL 6978874, at *5 (S.D.N.Y. Nov. 18, 2013).  "Rule 60

'requires in all events that [the] motion "be made within a reasonable time."'"  *Id.* (quoting

*LaFortune v. Hertz Corp.*, No. 98-CV-9154, 2000 WL 281779, at *2 (S.D.N.Y. Mar. 13, 2000));

*see also* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2866 (3d

ed. 2013) (June 2024 Update) ("The one-year period represents an extreme limit, and the motion

may be rejected as untimely if not made within a 'reasonable time' even though the one-year

period has not expired.").  "When assessing what constitutes a 'reasonable time,' [courts] look to

'the particular circumstances of the case, taking into account the reason for any delay, the

possible prejudice to the non-moving party, and the interests of finality.'"  *Wang*, 839 F. App'x

at 646 (quoting *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,

864 F.3d 172, 182 (2d Cir. 2017)); *see also Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D.

109, 116 (S.D.N.Y. 2019) (same).

The Court finds that Targownik's motion, which was filed on September 9, 2024, is

untimely under both Rule 59(e) and Rule 60(b).  First, her motion is untimely under Rule 59(e)

because it "bears no relationship to the district court's alteration of the initial judgment," *Tru-Art*, 852 F.3d at 222, and therefore should have been filed within twenty-eight days of the October 11, 2023 entry of judgment, (*see* Judgment).   Second, although Targownik's motion falls within the outer limit prescribed by Rule 60 because it was filed within a year of entry of the judgment, the Court finds that it was not filed within a reasonable time of the October 11, 2023 entry of judgment.   Targownik filed her motion eleven months after the initial entry of judgment, after representing to the Court only two grounds on which she intended to move to amend and after Seymour represented that he was requesting to amend to include an award of post-judgment interest, putting Targownik on notice to do the same.[17]   In addition, Targownik failed to provide any mitigating circumstances to justify her untimeliness.   Targownik's lack of explanation for her delay renders the delay unreasonable.   *See, e.g.*, *Gonzales*, 2013 WL 6978874, at *6 (finding an unexplained six-month delay unreasonable); *United States v. $350,000*, No. 92-CV-4011, 1996 WL 706821, at *2 (E.D.N.Y. Dec. 6, 1996) (finding an unexplained eight-month delay unreasonable); *Sasso v. M. Fine Lumber Co.*, 144 F.R.D. 185, 188–89 (E.D.N.Y. 1992) (finding an unexplained nine-month delay unreasonable).   Accordingly, the Court finds that Targownik failed to make her motion within twenty-eight days of the entry of judgment, as required by Rule 59(e), and failed to make her motion within a reasonable time, as required by Rule 60(b).

---

[17]  (*See* Targownik's Letter dated Nov. 20, 2023, *Merrill Lynch v. Sohmer*, No. 16-CV-1856 (E.D.N.Y. Nov. 20, 2023), Docket Entry No. 180 (indicating that Targownik intended to move under "Rule 60, or other applicable authority, to include pre-judgment interest" but not indicating any motion to include post-judgment interest); *see also* Targownik's Letter dated Mar. 18, 2024, *Merrill Lynch v. Sohmer*, No. 16-CV-1856 (E.D.N.Y. Mar. 18, 2024), Docket Entry No. 188 (reiterating that Targownik was moving to include an award of prejudgment interest and confirming that Seymour was moving to "seek interest on his claims for which the jury awarded him damages").)

19

## B.   Merits

It is unclear whether the Court may award post-judgment interest in an interpleader

action.  Although post-judgment interest "shall be allowed on any money judgment in a civil

case recovered in a district court," 28 U.S.C. § 1961(a), and the Second Circuit has held that

section 1961's "terms do not permit . . . the exercise of judicial discretion in its application,"

*Tru-Art*, 852 F.3d at 223 (quoting *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l,

Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989)), it is unclear whether a jury verdict in an interpleader

action constitutes a "money judgment . . . recovered" such that it triggers the statutory language

of section 1961 because an interpleader action merely allocates funds held in escrow to

appropriate parties rather than compensates parties for wrongs.  (*See* Action I Compl. ¶ 1 ("This

is an action for interpleader pursuant to 28 U.S.C. § 1335 to determine the proper ownership,

distribution of, and Interpleader Defendants' entitlement to, valuable assets held by Interpleader

Plaintiff.")); *see also Amica Mut. Ins. Co. v. Noel*, No. 16-CV-469, 2017 WL 2311857, at *1–2

(D. Conn. May 26, 2017) (denying, in a federal interpleader action to clarify and discharge an

insurer's obligations on a sum of money due to the defendant as a result of a state court

settlement agreement, the defendant's motion to amend to award post-judgment interest because

he "ha[d] not 'recovered' 'any money judgment' 'in a district court'" and "[t]o the extent that

this case result[ed] in [the defendant] receiving money, that is merely because the court ha[d]

granted [the plaintiff]'s request to clarify, and to allow [the plaintiff] to discharge, preexisting

obligations").  *But see Chase Manhattan Bank N.A. v. Traditional Invs. Corp.*, No. 92-CV-2774,

1995 WL 72410, at *5 (S.D.N.Y. Feb. 21, 1995) (awarding post-judgment interest in an

interpleader action because "[s]ection 1961 is construed literally").  It is also unclear whether

awarding post-judgment interest in an interpleader action would contravene the purpose of post-

judgment interest, which "is to compensate the successful plaintiff for being deprived of

20

compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Padberg v. Giuliani*, 295 F. App'x 455, 457 (2d Cir. 2008) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990)).  As Seymour argues, "the Judgment could have been satisfied immediately upon entry" because the funds "were deposited into the Registry for the [Eastern District] as per the Stipulation and Order of Dismissal executed on April 28, 2017."  (Seymour's Recons. Opp'n 11.)  Because Targownik has not provided any caselaw supporting an award of post-judgment interest in an interpleader action, the Court denies this request to amend the Action I Second Amended Judgment to do so.

### 3.   The Court grants Targownik's request to amend the Action I Second Amended Judgment regarding prejudgment interest

The Court grants Targownik's timely request to amend the Action I Second Amended Judgment regarding prejudgment interest to "clarify that certain amounts due to [Sally's Estate] are payable by Seymour."[18]  (Targownik's Recons. Mot. 1.)  Targownik's motion is timely under Rule 59(e) because it was filed on September 9, 2024, and relates to the Court's alteration of the Amended Judgment, *Tru-Art*, 852 F.3d at 221–22, and therefore was filed within twenty-eight days of the August 29, 2024 entry of judgment, (*see* Action I Second Am. Judgment).  Accordingly, the Court grants this request to amend.

## II.   Conclusion

For the reasons discussed above, the Court (1) denies Seymour's motion for partial reconsideration, (2) denies Targownik's motion for partial reconsideration, and (3) grants in part and denies in part Targownik's motion to amend.  The Clerk of Court is respectfully directed to

---

[18]   Although Seymour objects to Targownik's request, the only arguments he makes are with respect to the interest rate at which the prejudgment interest should be granted and not with respect to amending the judgment.  (Seymour's Recons. Opp'n 11; *see also* Seymour's Recons. Mot. 3–5.)  However, as discussed above, the Court denies Seymour's motion to reconsider Targownik's award of prejudgment interest at a rate of 9%.  (*See supra* section I.b.)

further amend the Action I Second Amended Judgment to reflect that "Seymour Sohmer pay to

the Estate of Sally Sohmer the sum of $53,282.47 in prejudgment interest."

Dated:  October 2, 2024
         Brooklyn, New York


                              SO ORDERED:



                              ____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge